Mobrie Slifkin, J.
Petitioner brought this article 78 proceeding for judgment declaring the invalidity of Local Ordinance No. 263-70 of the Town of Cortlandt, New York, as adopted by the Town Board on August 18, 1970 and enjoining its enforcement in futuro.
The controversy centers on the township’s conferral of peace officer status upon all members of its civil defense auxiliary police. It is petitioner’s contention that the challenged ordinance is, in effect, a grant of regular police force powers in derogation of specific State laws which provide the sole and exclusive method by which towns in Westchester County may establish police departments. (L. 1936, ch. 104, as amd.)
Respondents argue that pursuant to enabling legislation (N. Y. State Defense Emergency Act, L. 1951, ch. 784, § 1, art. 8), the Town of Cortlandt was and is authorized to enact and enforce the challenged ordinance.
Respondents’ opposing affidavits disclose that of the 35 member civil defense volunteer force, 29 men are attached to and function as the auxiliary police in the town. These men are regimented under a table of organization providing for 1 captain, 3 lieutenants, 4 sergeants, 5 corporals and 16 patrolmen. None of them receive any monetary compensation for the time they devote to this pursuit. Further, the force operates during scheduled drill periods as a complement of peace officers and apparently performs all of the duties normally incumbent upon a duly organized police department including the enforcement of traffic regulations.
The Town of Cortlandt does not presently have an established regular police department. Nor does it claim to have appointed any special or part-time policemen in accordance with the provisions of the Laws of 1936 (ch. 104, §§ 17, 18, as amd. by L. 1941, ch. 812; L. 1959, ch. 175). Its argument is simply that pursuant to the applicable provisions of the New York State Defense Emergency Act, the present ordinance is valid, proper and necessary to the well-being, safety and protection of the township.
Petitioner offers several exhibits tending to support its claim that the town’s auxiliary police are in fact acting as a regular police force. A uniform traffic ticket (No. 65255) issued on *567 May 27, 1971 and bearing the legend “ Town of Cortlandt Police ’ ’ is among them. It further appears the auxiliary force is equipped with uniforms, a radio communication section and special vehicles bearing the legend “ police ”. In sum,'to the casual observer, there would be no reason to infer the status of the volunteer force as anything less than a regularly constituted police department.
The New York State Defense Emergency Act (L. 1951, ch. 784, § 2, as amd. by L. 1951, ch. 786, § 1, and L. 1967, ch. 233, § 1) declares the legislative intent that there be “ the fullest participation by the people of this state in the defense effort ” in the event of enemy attack. To that end, political subdivisions of the State are granted power to effectuate this purpose by providing necessary assistance through existing or new agencies (L. 1951, ch. 784, §§ 14, 15, as amd.).
Pursuant to that general authority, the Town of Cortlandt was empowered to create a civilian defense auxiliary police force whose members would carry the status of “ peace officer ” as that term is defined in article 8 of the New York State Defense Emergency Act (L. 1951, ch. 784, § 100, subd. 3, as amd. by L. 1971, ch. 1097, § 136). The difficulty with respondents ’ posture ' is its distortion of the limitations set forth in said definition. Subdivision 3 of the act last referred to reads: “ ‘ Peace officer.’ An officer mentioned in subdivision thirty-three of section 1.20 of the criminal procedure law and such other officers duly authorized pursuant to this act to act as peace officers during attack or drill.”* (Emphasis added).
Although the civil defense auxiliary police are authorized to perform peace officer functions during a period of attack by enemy forces, or the threat thereof, the township cannot claim *568 the existence of this situation to render operative that condition precedent for its auxiliary police to act as peace officers.
Respondents rely upon what they term a “ comprehensive drill period ”, on a rotating monthly schedule, each of several hours’ duration, as providing the basis for the town’s auxiliary police to function as peace officers. However, as set forth on the assignment schedule drawn up by the town’s Civil Defense Deputy Director a drill period could theoretically be enlarged to cover most of the month by the simple expedient apparently employed. Only a few of the 29 man volunteer force are assigned to a given “ drill ” period. Hence, respondents urge that it is necessary to schedule a larger number of drill periods so that each of the men is kept operationally ready.
True it is that most of the volunteers receive approximately one drill per month, going by the deputy’s schedule. But the entire force is never given the opportunity to participate simultaneously in a civil defense exercise thereunder. In the court’s opinion, such practice is properly suspect vis-á-vis petitioner’s contention that respondents sought to evade the exclusive method by which the town could organize a police department.
The Laws of 1936 (ch. 104, § 1) provide, in part: “ Notwithstanding any other provisions of law, the establishment, organization and operation and all matters concerning police oy police departments in all towns in the county of Westchester shall be govefhed solely by the provisions of this act * * * The employment of such policemen and special policemen shall continue to be in accordance with the rules of the state civil service commission as heretofore extended by it to the employment of policemen in the towns of Westchester County.” (Emphasis added).
The conclusion reached is one that will not do violence to the spirit of either statute.
First, the court holds that the ordinance challenged by petitioner is valid to the extent that it is read as conferring peace officer status upon the auxiliary police force only during periods of attack or duly scheduled drills. These drill periods must be set up to effectuate their proper purpose — to train only and not as a subterfuge for the establishment of the only police department in town. Co-ordinated drill periods on a monthly basis at which all members of the civil defense force participate simultaneously would seem appropriate and would not be objectionable in view of the expressed. State legislative intent.
*569 The court enjoins respondents from attempting to so constitute a drill period as to render it unnecessary for the town to consider establishing a regular police department. Second, the court holds as a matter of law that should the Town of Cortlandt desire a police department, it must comply with the provisions of chapter 104 of the Laws of 1936 and applicable State Civil Service Commission regulations. Any attempt to circumvent that statute, measured by action rather than words, will be declared illegal as contrary to the expressed command of the statutes.
Respondents’ auxiliary police have no authority to enforce the laws, statutes and ordinances of the town, county or State unless actually engaged in defense of the people during an attack or gaining experience against that sombre event during a properly convened and appropriately conducted drill period,
Respondents’ procedural contentions that this article 78 proceeding was untimely brought and that it seeks relief obtainable solely by a declaratory judgment action are meritless.
The Second Department has expressly permitted an attack on the validity of a local law involving the appointment of special patrolmen, brought in the form of an article 78 proceeding (Matter of Policemen’s Benevolent Assn. of Westchester County v. Board of Trustees of Vil. of Croton-on-Hudson, 21 A D 2d 693).
Moreover, were the court to agree with respondents that an article 78 proceeding was not available, this view would not mandate dismissal. Our courts'have long been sensitive to the admonition of CPLR 103 (subd. [c]): — a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form, but, having jurisdiction over the parties and subject matter, the court shall make whatever order is required for its proper prosecution. (Matter of Lakeland Water Dist. v. Onondaga County Water Auth., 24 N Y 2d 400; Matter of Mandis v. Gorski, 24 A D 2d 181; Eager, Declaratory Judgment Action, Law and Practice, § 80, subd. 3.)
Where it appears that a challenge to the validity of an ordinance may be maintained alternatively by article 78 review or declaratory judgment, the gravamen of the cause should determine the applicable Statute of Limitations. An action seeking declaratory judgment would therefore be governed by the time limitation expressed in CPLR 213 (subd. 1). (See Rock Hill Sewerage Disposal Corp. v. Town of Thompson, 27 A D 2d 626.) The four-month Statute of Limitations applicable to article 78 proceedings (CPLR 217) would bar an attack upon *570 the resolution adopting the ordinance in suit if the sole ground was arbitrariness. A declaration that respondents’ resolution and ordinance is invalid for respondents’ want of power arises from and proceeds upon quite a different footing. (Matter of Foy v. Schechter, 1 N Y 2d 604, 615; Matter of Gimprich v. Board of Educ. of City of N. Y., 306 N. Y. 401.) Thus, when considering the applicable Statute of Limitations, the court looks “ for the reality, and the essence of the action and not its mere name (Morrison v. National Broadcasting Co., 19 N Y 2d 453, 459 quoting from Brick v. Cohn-Hall-Marx Co., 276 N. Y. 259, 264.) This proceeding was therefore timely brought.

 The terms “ attack ” and “ drill ” as used are defined by the following sec* tions: “2. ‘ Attack ’. Any attack, actual or imminent, or series of attacks by an enemy or a foreign nation upon the United States causing, or which may cause, substantial damage or injury to civilian property or persons in the United States in any manner by sabotage or by the use of bombs, shellfire, or nuclear, radiological, chemical, bacteriological, or biological means or other weapons or processes. * * *
"14. ‘Drill'. Any duly authorized activity of the state civil defense commission or a local office of civil defense, or subdivision, service or unit thereof, with or without the participation of the general public, held in training or preparation for enemy attack or for rehabilitation and recovery procedures following an attack. Drill is synonymous with authorized test, training, or training or practice exercise. Drill includes assistance by civil defense forces in combatting natural or peacetime disasters upon the direction of a public officer authorized by law to call upon a civil defense director for assistance in protecting human life or property.” (L. 1951, ch. 784, § 3, as amd. by L. 1961, ch. 972, § 2.)