Hon. David J. Gilmartin County Attorney — Suffolk County
This is in response to your recent letter in which you request our opinion concerning the following:
 "1. Are the activities of the auxiliary police such as directing traffic and patrolling neighborhoods for the purpose of maintaining security to be considered `drills' within the meaning of the State Defense Emergency Act?
 "2. If any such activity does indeed constitute a `drill', is the individual volunteer member, the local sponsoring municipality, and the County immune from tort liability under Section 113 of the Defense Emergency Act? McKinney's Unconsolidated Laws § 9193."
In response to your first question, whether the activities described, "such as directing traffic and patrolling neighborhoods * * * [are] to be considered `drills' * * *", it is, first, necessary that the activity be authorized by the local civil defense director as a drill. McKinney's Unconsolidated Laws, § 9123, subdivision D, para. 23, specifically authorizes plans to "control pedestrian and vehicular travel during tests and drills * * *" (emphasis added). It would appear to be imperative that a "drill record" be maintained to demonstrate that such activities in and of themselves are a necessary part of training. Whatever permissive activity is involved must be within an authorized training program.
Moreover, it is most important that the municipality be prepared to prove that the intended activity is not a subterfuge in order to use auxiliary police to perform police duties in the place of regular police (PoliceBenevolent Ass'n. v Hitt, 75 Misc.2d 565, [Westchester Co., Sup Ct, 1972]; Portanora v Scher, 75 Misc.2d 570, [Westchester Co., Sup Ct., 1973]; see also, Op Atty Gen [Inf] August 13, 1970; Op Atty Gen [Inf] December 11, 1972).
In response to your second question, section 9193 of McKinney's Unconsolidated Laws (section 113 of the Defense Emergency Act) in part provides that:
 "The state, any political subdivision, municipal or volunteer agency * * * performing civil defense services in this state pursuant to arrangement, agreement, or compact for mutual aid or assistance, * * * or any individual, partnership, corporation, association, trustee, receiver or any of the agents thereof, in good faith carrying out, complying with or attempting to comply with any law, any rule, regulation or order duly promulgated or issued pursuant to this act, * * * relating to civil defense, including but not limited to activities pursuant thereto, * * * or in connection with an authorized drill or test, shall not be liable for any injury or death to persons or damage to property as the result thereof."
The Legislature has thus mandated that a civil defense member (auxiliary police) and the municipality for whom and under which he should act shall not be liable for his negligence in the performance of his duty during a declared emergency or authorized drill (Bundy v Peugeot, 222 N.Y.S.2d 576, City Court of Buffalo, 1961). As stated above, if the member is engaged in a declared emergency or a duly authorized drill there would be no liability for negligence. If it should be found that the negligence occurred while no emergency or authorized drill was involved, then relief for liability must be determined as provided in the General Municipal Law, §§ 50-a, 50-j, 50-k, 50-l. (See, Bush v Smith, 276 App. Div. 923
[2d Dept, 1950]; Sikora v Kellor, 17 A.D.2d 6, affd 13 N.Y.2d 610
[1963].)
The answer to your first question is that the auxiliary police may be used in a drill to direct traffic and patrolling neighborhoods for the purpose of maintaining security.
The answer to your second question is that the individual member and the municipality are immune from liability for tort committed during the performance of an authorized drill.